[No. 19268. Department One. — December 6, 1893.]

DAWSON LOWE ET AL., RESPONDENTS, *v.* C. L. WOODS ET AL., APPELLANTS.

AGISTOR'S LIEN, HOW CREATED.—In order that the agistor's lien given by section 3051 of the Civil Code may attach it is essential that the animal be placed with the agistor by its owner, or some one having authority from him.

ID.—CONDITIONAL SALE OF HORSE—DEPOSIT IN LIVERY STABLE BY POSSESSOR—TITLE IN SELLER.—No lien is created in favor of a livery stable keeper for the feeding of a horse left with him by one having possession thereof under a conditional sale, by the terms of which the title is retained in the seller until the payment of the purchase price, upon failure to pay which the horse is to be returned to the seller without cost or expense.

APPEAL from a judgment of the Superior Court of San Luis Obispo County.

The facts are stated in the opinion of the court.

*F. Adams & F. A. Dorn,* for Appellants.

There could be no agistor's lien in the case at bar as such a lien can be acquired only for services performed for the owner of the animal. (*Hollingsworth* v. *Dow,* 19

Pick. 228; *Ingalls* v. *Vance*, 61 Vt. 582; *Stott* v. *Scott*, 68
Tex. 302; Civ. Code, sec. 1861; *Lewis* v. *Tyler*, 23 Cal.
364; Jones on Liens, sec. 691; Phillips on Mechanics'
Liens, secs. 65, 497.) If any lien exists it can only
attach to what interest Woods had in the stallion (the
right to buy) the plaintiffs having accepted him from
Woods with full knowledge of Woods' right and agree-
ment with defendant Adams. ( *Walker* v. *Burt*, 57 Ga.
20; *Conrow* v. *Little*, 41 Hun, 395; *Hollingsworth* v. *Dow*,
19 Pick. 228; Phillips on Mechanics' Liens, secs. 67,
186, 497.)

*Wilcoxon & Bouldin*, and *J. M. Wilcoxon*, for Re-
spondents.

The transaction between the defendant Woods and
Adams was nothing more or less than a sale, and the
vendor Adams retained merely a lien for the purchase
price. ( *Palmer* v. *Howard*, 72 Cal. 293; 1 Am. St. Rep.
60.) This lien was dependent upon possession. (Civ.
Code, sec. 3049.) The law gives a livery and feed stable
keeper a lien upon any animal, no matter to whom it
belongs, so long as his possession is lawful. (Civ. Code,
sec. 3051.) The case here is precisely the same, and
comes within the rule and the spirit of the reasoning
announced in the case of *Chuch* v. *Garrison*, 75 Cal. 199.

GAROUTTE, J.—This is an action brought by livery
and feed stable keepers to foreclose a lien upon a horse
for the feeding of the animal. The horse was placed by
defendant Woods in charge of plaintiffs, he agreeing to
pay the sum of twenty dollars per month for his care
and feed. At this time Woods was in possession under
a contract of purchase from the defendant, Adams, the
true owner, the agreement between them being that he
should have the use of the horse, and should feed and
care for him, but that the title should remain in Adams
until the sum agreed upon was paid; and that event
never came to pass. It was further expressly stipulated
by these parties that Woods should keep the horse with-

out cost or expense to Adams, and that upon his failure to pay the amount stipulated it should be redelivered without cost or expense. This appeal is prosecuted by defendant Adams from a judgment foreclosing the lien and ordering a sale of the horse.

Among other matters, it is found by the trial court that Adams was at all the times mentioned in the complaint the owner of the horse; that Woods informed plaintiffs at the time they received the horse that Adams was the owner thereof, and within one week thereafter plaintiffs had full knowledge of the terms and conditions of the contract by virtue of which Woods had possession. It thus appears that the court not only found the ownership of the horse to be in appellant Adams, but found that respondents had knowledge of the fact upon the first day of their possession, and within a few days subsequent thereto had complete and perfect information of all the circumstances surrounding Woods' possession. There is certainly no principle of law that would entitle plaintiffs to a lien upon this horse after they became conversant with the character of Woods' possession, and all the terms of the agreement under which he held. But we will not consider the effect of the finding of the court that plaintiffs were informed by Woods when the horse was placed in their care that Adams was the owner thereof, as we are prepared to take a broader view and hold that in this case, as disclosed by its entire history, no lien whatever was created in favor of plaintiffs.

That portion of section 3051 of the Civil Code bearing upon this question is as follows: "And livery or boarding, or feed stable proprietors, and persons pasturing horses or stock, have a lien dependent on possession for their compensation in caring for, boarding, feeding, or pasturing such horses or stock." In *Dorman* v. *Green*, 4 Tex. App. Civ. Cas. 563, under a statute in all material respects similar to the provisions of our code, and upon a state of facts involving the principle presented in this appeal, the supreme court of that state said: "This is not a question of notice, but a matter of property right

in which the doctrine of *caveat emptor* applies. In order for the statutory lien to attach it is necessary that the animal be placed with the livery-keeper by its owner, or some one having authority from him." In *Stott* v. *Scott*, 68 Tex. 304, the court said: "There is nothing in this statute to indicate an intention to give such a lien on property which may be placed in such a stable as is mentioned by some person, neither the owner nor the agent of the owner. It has been held that the lien given by the common law to an innkeeper upon the horse of a traveler who becomes his guest will attach, although the guest may have stolen the horse, but it is not believed that such a lien has ever been held to exist upon property placed with one who has a lien only by force of a statute, by a person not the owner or the agent of the owner."

Under a quite similar statute the supreme court of New Hampshire in *Sargent* v. *Usher*, 55 N. H. 287, 20 Am. Rep. 208, said: "The idea that a lien may be created by a contract of the possessor of animals for their keeping, the owner being in no way privy to such contract, when no rights whatever as against the owner could be conferred or created by a contract of sale, seems anomalous to say the least. Such a thing would, as it seems to me, be a violation of the fundamental rights of property guaranteed by the constitution, and if the legislature had undertaken by this act to create a lien to arise on such a state of facts, I think it would be the duty of the court, as more than intimated by Foster, J., in *Jacobs* v. *Knapp*, 50 N. H. 82, to hold the act so far unconstitutional and void." And in the same case Cushing, C. J., said: "Now, there seems no good reason why a party not the owner should be permitted to pledge the property, or create a lien upon it, either at common law or by statute, any more than he should be permitted to sell it. Neither is there any good reason why a person, who is about to establish relations with another out of which a lien would be created, should not make the same inquiries which would be incumbent on him to make if

he were going to purchase the property. . . . . It is claimed in the plaintiff's brief that Robinson ought to be considered in law as agent of the defendant, but I have seen no case in which it has been held that a party who permits another to have possession of his personal property, by so doing in law constitutes that other his agent to sell or pledge that property." In *Small* v. *Robinson*, 69 Me. 425, 31 Am. Rep. 299, it was held that a hackman having the possession of a hack, upon terms similar to those upon which Woods was in possession of this horse, had no interest in the hack that would allow him to create a lien upon it for repairs, the court quoting the language of Shaw, C. J., in *Hollingsworth* v. *Dow*, 19 Pick. 228, wherein he said: "A lien is a proprietary interest, a qualified ownership, and in general can only be created by the owner or by some person by him authorized." The principle of law here involved is also fully discussed in *Robinson* v. *Baker*, 5 Cush. 137; 51 Am. Dec. 54; *Jacobs* v. *Knapp*, 50 N. H. 71; and *Hollingsworth* v. *Dow*, 19 Pick. 228.

At the time Woods placed the horse in the custody of plaintiffs, defendant Adams was the owner. The title was in her; the court so found under the agreement, and authority in law is not lacking to support the finding. (*Kohler* v. *Hayes*, 41 Cal. 455; *Hegler* v. *Eddy*, 53 Cal. 598.) Adams being the owner of the horse, without her assent Woods could not sell it; he could not pledge it; neither had he the power to create a lien upon it by placing it in the hands of an agistor. Without any contract upon appellant's part, without any personal liability whatever, without her assent in any form, and even without any notice to her of the facts which are claimed to have created the lien, it is now sought to take her property and apply it to the satisfaction of Woods' debt. Such a practice would be violative of the fundamental principle of law that no man's property can be taken from him without his consent.

Respondents' counsel rely upon *Chuch* v. *Garrison*, 75 Cal. 199, to support the judgment attacked by this ap-

peal. The question was there presented upon a general demurrer to a complaint in intervention. The decision of the court is not as full and explicit as it might have been, but, as we construe it, it is there decided that actual ownership of the machine by the parties hiring the work done was not necessary to give plaintiffs a standing in court. In a limited sense this is true, and only in a limited sense. It was never intended to hold that a thief by his contract with an agistor, or mechanic, could create a lien upon the stolen property, or that a stranger in no way in privity with the true owner could create such a lien. Aside from the question of estoppel of the owner by reason of his negligence, and we have no such question presented in this case, the lien can only be created by the owner, or by some one duly authorized to act for him. English authorities, and some early American cases, have recognized a different rule as to common carriers and innkeepers, but as to common carriers the law declared in those cases was held unsound in *Robinson* v. *Baker*, 5 Cush. 137; 51 Am. Rep. 54; and we have no doubt that as to innkeepers the true rule forms no exception to the general principle we have declared.

For the foregoing reasons it is ordered that the judgment be reversed and the cause remanded.

HARRISON, J., concurred.

PATERSON, J.—I concur in the judgment on the first ground stated by Mr. Justice Garoutte.